Anderson, Appellant, *v.* London Guarantee & Accident Co. et al.

Argued January 7, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*John J. McDevitt, Jr.,* with him *Bernard J. Kelley,* for appellant.—Appellee was guilty of negligence and judgment n. o. v. for defendant should not have been entered: Curtin v. Somerset, 140 Pa. 70; Stubbs v. Light Co., 84 Pa. Superior Ct. 1; Bojarski v. Howlett, 291 Pa. 485; Williams v. Floral Co., 252 Pa. 140; Janock v. R. R., 252 Pa. 199; Dougherty v. R. R., 257 Pa. 118.

*Layton M. Schoch,* with him *W. W. Smithers,* for appellee.—It was neither charged nor proved that there rested upon appellee or Simkins any duty to make the test or inspect the boiler or flange: Durkin v. Coal Co., 171 Pa. 193; D'Jorko v. Coal Mining Co., 231 Pa. 164; Golden v. Coal Co., 225 Pa. 164.

OPINION BY MR. JUSTICE SADLER, January 28, 1929:

George Anderson, whose widow is plaintiff in the present proceeding, was killed by an explosion on August 25, 1924, while engaged in erecting a coal ship hoist at the plant of the Sunbury Converting Works for the Beaumont Company, his employer. With fellow servants of the latter he was at work some distance from a boiler recently put in place by another independent contractor, Badenhausen, which at the time had not however been fully tested nor accepted by the purchaser. On the Saturday preceding the accident the work on it was com-

pleted, and the two vents on the top clamped down so that trials could be made as to its pressure capacity, and a preliminary test was then undertaken. This work was done entirely by the manufacturer, the openings having been closed by his servants, and remaining in the same condition until the Monday following.

The Sunbury Converting Works, owner of the plant, made application for boiler insurance to the London Guarantee & Accident Company, one of the defendants in this proceeding. To determine whether a policy should be issued, the latter sent an agent, Simpkins, to pass upon the sufficiency of the completed boiler. Admittedly, he was an employee of the inspection department of the indemnity company, as shown by his business card offered in evidence, but it was denied that he "commanded, directed or controlled the test." When he came upon the ground, the boiler was erected, and the openings on top had been closed. The only supervision exercised by him is shown by the following testimony: He "examined the bottom of the boiler, and got in between the boiler and then went on top," where the coverings were in place, and there stood until the explosion occurred. Wynans, the foreman of Badenhausen, was in charge and gave the order to the workmen. He testified that the flange "was thoroughly tightened properly; that is, the bolts were made taut. Then I had the man [one of his employees] take and go round it three times before he tightened up entirely on it to be sure that all bolts were tightened down evenly."

Simpkins, having gotten on top of the boiler, told the contractor's employees to start the pump so that the hydrostatic test could be proceeded with, and this they did. The pressure required by the specifications was 311 pounds, but when it reached 255, the covering over the outlet on top broke, and was blown into the air. Anderson, working on an iron beam about eight feet from the boiler, and five feet higher, was thrown by the explosion from that position to the ground 30 or 40 feet below, and

death resulted. The widow brought suit against Baden-hausen, the manufacturer, and the insurance company jointly, contending the injury was caused by negligence in using a flange of insufficient thickness to cover the opening, from which the proper braces were missing, thus lessening its strength, and in failing to provide valves to remove trapped air within the boiler. The trial resulted in a nonsuit as to Badenhausen, one of the defendants, but as to the insurance company the evidence was submitted to the jury, and a verdict rendered for plaintiff on the theory that the test was made without the taking of adequate precautions by Simpkins to discover possible defects before permitting the application of pressure, for which lack of care his employer was liable.

Stress was first laid in the court below on the fact that employees of boiler insurance companies may make inspections under our Acts of Assembly, in lieu of persons selected by the State, with the resulting imposition of like duties and obligations: Act of May 2, 1905, P. L. 352 (section 19), amended by the Acts of July 12, 1919, P. L. 924; June 14, 1923, P. L. 751, and April 9, 1925, P. L. 251. The investigation here made was undertaken merely to determine the question of acceptance in a plant not yet completed, and the acts referred to are not controlling in the present case, as the court below decided in finally entering judgment for the defendant n. o. v. It properly held the rule of liability laid down in Durkin v. Kingston Coal Co., 171 Pa. 193, and D'Jorko v. Berwind-White Coal Mining Co., 231 Pa. 164, had no application. Nor is it material, as insisted by appellant, that the amending Act of April 9, 1925, supra, provides that a boiler inspector shall be treated as the employee of the one who hires him, since the declaration thus expressed is made only to indicate that but one annual permit fee shall be charged, though the insurance company has in service more than one inspector. We can therefore dismiss these acts as affecting in any way

the determination of the present case, though the subject of spirited discussion in the court below, and a matter of comment in the paper books presented here by both parties.

The court below in entering judgment for defendant correctly stated the questions here involved in these words: "The decision in this case rests on the failure of the plaintiff to prove a neglect of duty by the defendant, London Guarantee & Accident Co., Ltd., or its employee, Simpkins." The boiler had been erected by Badenhausen, and had not been accepted by the vendee. An application to insure had been made, and the defendant desired to know whether the specifications had been complied with by the manufacturer, and if the construction was of such character as to withstand the contemplated pressure before undertaking the risk. The duty of Simpkins was to find if the contractor had installed a machine which would withstand the resistance for which it was designed. When he arrived, the boiler was in the control of the manufacturer, and the openings had already been closed, with the alleged defective flange, and tightly fastened. The directions given by him were to the employees of Badenhausen to start the test, to learn whether the work contracted for was properly completed, so as to justify the making of an insurance contract, and nothing more.

One controlling the operation of a boiler is bound to make reasonable inspection to guard against explosions which may cause injury to his own employees, or even third parties. So, the manufacturer is liable where damage is suffered as a result of his negligence (Erie City Iron Works v. Barber & Co., 102 Pa. 156; Losee v. Clute, 51 N. Y. 494), or the owner may be when he has accepted it, and thereafter fails to make reasonable inspection to discover defects (McNeil & Brother Co. v. Crucible Steel Co., 207 Pa. 493), and this responsibility may be enforced against an insuring company: Van Winkle v. American Steam Boiler Co., 52 N. J. L. 240, 19 Atl. 472.

But the right of such an indemnitor to inspect does not impose upon it a duty to do so, though, if it sees fit to exercise the privilege, it becomes responsible for the negligence of those appointed to supervise (Hartford Steam Boiler Inspection & Ins. Co. v. Pabst Brewing Co., 201 Fed. 617), if it fails to put in charge competent individuals: Anderson v. Hays Mfg. Co., 207 Pa. 106. There is no evidence here that Simpkins was unfit to perform the duty delegated to him, which was merely to see if Badenhausen had supplied a boiler which would withstand the specified pressure.

Where the duty of inspection has been imposed, and there is proven a failure to exercise due care, which may be inferred from the circumstances (Dei v. Stratigos, 287 Pa. 475; Janock v. B. & O. R. R. Co., 252 Pa. 199; Dougherty v. P. R. T. Co., 257 Pa. 118; John v. Reick-McJunkin Dairy Co., 281 Pa. 543), liability attaches, but a defendant is not responsible where it does not have charge of the work (Bojarski v. Howlett, 291 Pa. 485), or the act of its servant is not within the course of the performance of some obligation resting on the master: Byrne v. Pittsburgh Brewing Co., 259 Pa. 357. The Sunbury Converting Works had not accepted the boiler; its preparation for the test, and the making thereof, to determine whether the specifications had been complied with, were in the hands of the seller. Simpkins was present to determine whether the necessary pressure, as fixed by the contract, was attainable. He had nothing to do with the removal of possible accumulated air in the pipes, or the closing of necessary openings. The insurance company was solely interested in determining whether the completed article complied with the agreement as to resisting power, and sent its observer to determine this fact. It had not entered into an insurance contract or assumed responsibility to make proper inspections for the protection of itself and owner, and therefore cannot be held responsible for the negligence claimed to have caused the injury. It owed Anderson

no duty whatever at the time of the explosion either growing out of contract or imposed by law (Losee v. Clute, supra; Stubbs v. Duquesne Light Co., 84 Pa. Superior Ct. 1; Curtin v. Somerset, 140 Pa. 70), and cannot be compelled to respond for the damages sustained.

Nor do we see merit in the complaint suggested by the third assignment of error. A witness was asked concerning a statement made by Simpkins fifteen minutes after the accident, indicating that he was making the test at the time of the accident. An objection was sustained by the court, presumably because the testimony desired to be brought out was a matter of opinion, or a narrative of what had previously occurred, and therefore not receivable as a part of the res gestæ, though the record fails to disclose the actuating reason for excluding the testimony. If not a spontaneous declaration of fact at the time of the accident, it was not receivable for the purpose offered: Milwaukee Mfg. Co. v. Point Marion Coal Co., 294 Pa. 238; Briggs v. R. & S. Co., 206 Pa. 564; McGrath v. Penna. Sugar Co.. 282 Pa. 265. It is unnecessary, however, to discuss the correctness of the ruling made, for it appears from the record that at the time of the rejection of the evidence the court stated: "You may call the man back again after I read the cases." The witness was again put upon the stand, but no such query was made, though permission to further question and show the propriety of the examination had been given.

The judgment is affirmed.